[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 737 
On December 21, 2005, William T. McGowin IV ("the husband") filed a complaint seeking a divorce from Sherry B. McGowin ("the wife"). In his complaint, the husband sought custody of the parties' two minor children and an equitable division of the parties' marital assets. The wife answered and counterclaimed for a *Page 738 
divorce; the wife sought custody of the children, an equitable property division, and alimony.
The trial court received testimony and documentary evidence at a hearing. On September 13, 2006, the trial court entered an order in which it divorced the parties, awarded primary physical custody of the children to the wife, divided the parties' marital property, awarded the wife alimony, and set the matter for a hearing on the issue of an award of an attorney fee for the wife. In a separate order dated October 11, 2006, the trial court awarded the wife's attorney an attorney fee. For the purposes of this opinion, we refer to those two orders as "the divorce judgment." The wife filed a postjudgment motion, which the trial court denied. The wife timely appealed.
The parties married in December 1988. Two children were born of the parties' marriage. The parties' daughter was 15 years old at the time of the August 22, 2006, hearing in this matter, and the parties' son was 10 years old. At the hearing, the husband withdrew his request for custody and instead asked the trial court to award the parties joint legal custody of the children and to award the wife primary physical custody.
Each of the parties graduated law school in 1989, and the husband then obtained his master of laws (LLM) degree in taxation. The parties began their legal careers working in Birmingham, and the wife continued her career after the birth of the parties' daughter. However, in approximately 1993, the wife stopped working in order to stay home with the parties' daughter and, later, with their son. The wife has not been employed outside the home since that time. In September 1993, the parties moved to Mobile to be closer to the wife's family. The parties still reside in Mobile.
The parties separated in March 2005. It is undisputed that the husband had an affair that ended in February 2005. The wife stated that she had suspected the husband had had an affair but that the husband had denied it. The husband stated that the marriage did not end because of that affair. The husband testified that he had been unhappy in the marriage for a number of years and that it had been a long time since the parties had been intimate.
After the parties separated, the husband began a relationship with another woman. The husband was still seeing that woman at the time of the hearing, and a portion of the evidence the parties submitted to the trial court pertained to the amounts of money the husband had spent on that woman during the parties' separation.
The husband's legal practice has been successful. The husband is currently a partner in a law firm; he stated that the firm's payment structure is in the nature of "eat what you kill," meaning that he was paid from the business he brought to or earned for the firm. In addition to his income from his law practice, the husband also receives semiannual attorney-fee payments from a class-action settlement he negotiated as one of the attorneys for the plaintiff's. For the years 2003, 2004, and 2005, the husband received total fees from that settlement of $385,929, $269,304, and $326,313, respectively.
The husband submitted into evidence an exhibit indicating his total income from his law practice and the class-action settlement fees. That exhibit and the husband's *Page 739 
testimony indicate that the husband's total income in 2003 was $507,665; in 2004 was $491,702; and in 2005 was $491,288. The husband indicated that his income for 2006 to the date of the August 22, 2006, hearing was $328,000. On cross-examination, the husband admitted that he had reported on his 2004 income-tax return a total income of $572,303. The husband testified that he could not explain the discrepancy between the amount of income he had testified that he had earned in 2004 and the amount that he had reported on his tax return, but he stated that it appeared that he had overstated his income on the income-tax return. At the time of the hearing in this matter, the parties had not yet filed their income-tax returns for the years 2005 and 2006.
The wife attempted to demonstrate that during the parties' separation the husband had wasted a great deal of the parties' marital assets. She presented evidence indicating that after the parties' separation the husband had established separate accounts in his own name in which to deposit the class-action settlement fees and his year-end distribution from his law firm. She contended that those deposits for the years 2005 and 2006 totaled approximately $600,000. The husband acknowledged spending money on his girlfriend and her son, as well as on himself and the parties' children. The husband also testified that he had used his separate accounts to make substantial income-tax payments. The exact amount the husband spent for various expenses during the parties' separation is not disclosed in the record. It appears, however, that his monthly salary from his law firm was used to support the wife and the children during the separation.
The parties valued the marital home at $400,000. At the time of the August 22, 2006, hearing, the marital home was subject to $153,000 in mortgage indebtedness. The parties have several well-funded accounts to pay for the children's college educations. In addition, the parties have a number of jointly held financial accounts with a total value of approximately $592,412. The wife had accounts held solely in her name that were not used for the benefit of the marriage. Those accounts, which had a total value of approximately $120,000 at the time the hearing, were funded from the remainder of an educational account established by the wife's parents and, it appears, from her inheritance from her grandmother.
The husband presented evidence indicating that the wife's mother had disclaimed a portion of her interest in the wife's grandmother's estate ("the estate"). The estate's accountant testified that, upon the settlement of the estate, the wife would receive $150,000 and an interest in a family owned limited liability company ("LLC"). The accountant explained that until the estate was settled he could not state what interest the wife would receive in the LLC or the value of that interest, but he stated that it appeared that the wife's interest in the LLC would be between 2.25% and 2.5%. The accountant stated that the LLC had had a distribution in 2005 and that the wife had received approximately 2.17% of that distribution as her share; the accountant did not testify regarding the amount of income the wife received from that source. It appears from comments made by the parties' attorneys that that income funded one of the accounts held solely in the wife's name. The wife insisted that it was not "guaranteed" that she would in fact receive $150,000 from her grandmother's estate as a result of her mother's partial disclaimer of her interest in the estate.
The husband also had accounts solely in his name, and he contended that those accounts, which appear to have been established *Page 740 
after the parties' separation, were not used for the common benefit of the parties' marriage. However, the cross-examination of the husband revealed that amounts from at least one of those accounts had been used to support the wife and the children during the parties' separation.
The husband submitted evidence indicating that the furnishings in the marital home were worth $100,000. The wife did not dispute that valuation. The husband acknowledged that he had purchased new furnishings for his home after the parties' separation, but no evidence pertaining to the value of those furnishings was presented to the trial court.
The husband insisted that the wife could return to the workforce and contribute to her own support. The husband testified that his firm paid "staff attorneys" approximately $90 per hour and that he believed the wife could work in a similar position. The husband acknowledged that he did not know whether other firms offered such jobs and that he had no knowledge of the market for those jobs. However, the husband stated that the wife's family is well known in Mobile and could assist her in finding employment.
The wife testified that, at the time they decided to separate, she and the husband had agreed that she would continue to stay at home and raise the children as she had during their marriage; the husband disputed that testimony. The wife testified that she had no desire to return to the workforce and that she wanted to remain at home with the children until the younger child, who was then in the fifth grade, graduated from high school. The wife also explained that she had a bladder condition that impacted her daily activities to some degree and that would prevent her from trying cases in a courtroom as an attorney. The wife testified that she had no idea how much she could contribute to her own support, that she had not worked in the legal community for approximately 13 years, and that she lacked computer skills.
The children are presently enrolled in a private school, and both parties testified that they want the children to remain at that school. The wife testified that the children were active in extracurricular activities and that they each participated in camps during their summer vacations. The wife testified that the cost of the children's extracurricular activities totaled approximately $1,000 per child annually and that the cost of the camps the children attended was approximately $1,750 per child.
The wife submitted evidence showing that her household budget for her recurring monthly expenses, including the mortgage payment but excluding the costs of the children's private school and extracurricular activities, was $4,899. The wife testified that, excluding the costs of the children's private school and extracurricular activities, she needed $1,700 to $1,800 per month in child support to meet the basic support needs of the children. She also asked that the trial court order the husband to contribute to or pay for the children's extracurricular activities and summer camps.
In the divorce judgment, the trial court, among other things, ordered the husband to pay $1,542 per month in child support and to pay all the children's private-school educational costs until the children graduate from high school. With regard to the property division, the trial court ordered that the parties equally divide the amounts in the jointly held accounts, that each party receive the accounts held solely in his or her name, and that the parties maintain the children's accounts for the educational needs of the children. The trial court awarded the wife any interest in the family *Page 741 
owned LLC that she might receive, and it awarded the husband any interest the parties might have in the husband's law practice and the property associated with that practice. Pursuant to the divorce judgment, the wife was awarded possession of the marital home until she remarried or cohabitated with a member of the opposite sex to whom she was not related, or until the parties' youngest child reaches the age of 19; upon the occurrence of one of those events, the marital home is to be sold and the proceeds from the sale divided equally between the parties. The divorce judgment specified that the husband was to be responsible for the mortgage indebtedness, taxes, and insurance on the marital home until the home was sold. In addition, the trial court required the husband to pay the wife $3,000 per month in rehabilitative alimony for 18 months and $1,500 per month thereafter, and it ordered the husband to pay the wife's attorney a $25,000 attorney fee.
On appeal, the wife first challenges the trial court's award of child support. In that part of its judgment pertaining to child support, the trial court found that "[t]he combined income of the parties exceeds the child-support guidelines; hence, child support is not set by the Rule 32 Guidelines formula." However, the trial court established the husband's child-support obligation at $1,542, the exact amount set forth in the Rule 32, Ala. R. Jud. Admin., child-support guidelines for child support for two children when the parties' combined monthly gross income is $10,000 per month.
In this case, the amount of the husband's child-support obligation cannot be calculated by reference to the Rule 32, Ala. R. Jud. Admin., child-support guidelines because the husband's monthly income exceeds the uppermost limits of the child-support schedule. When the parties' combined income exceeds the uppermost limit of the child-support schedule, the determination of a child-support obligation is within the trial court's discretion. Floyd v. Abercrombie,816 So.2d 1051, 1057 (Ala.Civ.App. 2001); Dyas v. Dyas,683 So.2d 971 (Ala.Civ.App. 1995). "[A] trial court's discretion is not unbridled and . . . the amount of child support awarded must relate to the reasonable and necessary needs of the children as well as to the ability of the obligor to pay for those needs."Dyas v. Dyas, 683 So.2d at 973.
 "When the combined adjusted gross income exceeds the uppermost limit of the child support schedule, the amount of child support awarded must rationally relate to the reasonable and necessary needs of the child, taking into account the lifestyle to which the child was accustomed and the standard of living the child enjoyed before the divorce, and must reasonably relate to the obligor's ability to pay for those needs. [Anonymous v. Anonymous, 617 So.2d 694, 697 (Ala.Civ.App. 1993)]. To avoid a finding of an abuse of discretion on appeal, a trial court's judgment of child support must satisfy both prongs."
Dyas v. Dyas, 683 So.2d at 973-74 (footnote omitted). Further, as this court has recently noted, "[t]he Comment to Rule 32 states that `[w]here the combined adjusted gross income exceeds the uppermost limit of the schedule, the amount of child support should not be extrapolated from the figures given in the schedule, but should be left to the discretion of the court.'"Arnold v. Arnold, 977 So.2d 501, 507
(Ala.Civ.App. 2007).
In arguing that the trial court erred in reaching its child-support award, the wife points out that although the trial court recognized that the parties' combined income exceeded the uppermost limits of the child-support schedule and, *Page 742 
therefore, that that schedule would not apply to determine the husband's child-support obligation, it still resorted to the guidelines in setting the child-support amount. The wife argues that the award provides child support at a level commensurate with the parties' earning a combined annual income of $120,000, whereas the evidence in this case establishes that the husband's income is approximately four times that amount. Further, the wife presented evidence indicating that the children's needs for basic support, excluding the costs of education and extracurricular expenses, exceeded the amount of child support awarded in the divorce judgment.
In response, the husband argues that the divorce judgment also requires him to make other payments, such as the mortgage payments on the home and the payments for the children's tuition expenses, that, he contends, are for the benefit and support of the children. However, the language of that part of the divorce judgment requiring the husband to pay the mortgage and other expenses related to the marital home clearly indicates that that obligation is in the nature of a property-division or alimony award. Further, the husband's obligation to pay for much of the children's private-school educational expenses is an obligation that would be considered an "additional" award of child support under Rule 32(C)(4), Ala. R. Jud. Admin.; the husband testified that he and the wife wanted the children to stay in the private school in which they were enrolled. This court has stated that "[t]he child support guidelines are designed to provide for the basic support needs of a child. In determining what items may be credited against a noncustodial parent's child support obligation, this court has disallowed credits for `extras' such as cars, gifts, and private school tuition." Deas v.Deas, 747 So.2d 332, 337 (Ala.Civ.App. 1999). See alsoHarmon v. Harmon, 928 So.2d 295, 302 (Ala.Civ.App. 2005) ("Although the trial court ordered the husband to pay the child's private-school tuition . . . as child support, private school tuition is not `"essential to basic child support."'");Hillis v. Boggs, 646 So.2d 124, 125-26 (Ala.Civ.App. 1994) (disallowing, as a credit against a child-support arrearage, amounts for items such as private-school tuition on the grounds that such expenses are not a part of the basic needs of the child for support); and Rotor v. Weiland,591 So.2d 893 (Ala.Civ.App. 1991) (same).
This court has recognized that
 "an award of the maximum amount under the guidelines, despite the fact that the parties' income exceeds the uppermost limit of the guidelines, in and of itself, is not necessarily an abuse of the trial court's discretion, see Bridges v. Bridges, 607 So.2d 289, 291 (Ala.Civ.App. 1992) (affirming an award of the maximum amount of child support under the guidelines, despite the fact that the father's income exceeded the uppermost limit of the guidelines, in consideration of the totality of the obligations owed by the father)."
TenEyck v. TenEyck, 885 So.2d 146, 158
(Ala.Civ.App. 2003). However, when the parties' incomes exceed the uppermost limit of the child-support schedule, the trial court must consider the evidence pertaining to the needs of the children as well as the noncustodial parent's ability to pay.TenEyck v. TenEyck, supra; Dyas v. Dyas, supra. In evaluating the support needs of a child, the trial court must consider "the lifestyle to which the child was accustomed and the standard of living the child enjoyed before the divorce." Dyas v. Dyas, 683 So.2d at 973 (footnote omitted).
In this case, the wife presented evidence indicating that the children's basic support needs, excluding the costs of extracurricular *Page 743 
activities and camps that the children enjoyed during the parties' marriage, exceeded the amount awarded by the trial court in child support. The evidence also establishes that the husband's income since 2003 has averaged over $40,000 per month. Thus, the undisputed evidence established that the reasonable needs of the children were greater than the child-support amount awarded in the divorce judgment and that the husband's income was sufficient to warrant a greater award. Accordingly, we conclude that the trial court abused its discretion in its award of child support, and we reverse the judgment as to that issue and remand the cause for the entry of a child-support award consistent with this opinion.
With regard to child support, the wife also argues that the trial court erred in failing to require the husband to maintain the children on his health-insurance policy after they reach the age of majority. It appears that the wife first sought that form of relief in her postjudgment motion. The wife cites Waddellv. Waddell, 904 So.2d 1275 (Ala.Civ.App. 2004), in support of her argument. In that case, a majority of this court held that as part of a postminority-educational-support obligation, a parent may be required to maintain health-insurance coverage for a child who is over the age of majority and is attending college. Waddell v. Waddell, 904 So.2d at 1283-86.
As the wife points out, the parties' children have excellent scholastic records and appear to be candidates for college education. The wife contends that a modification proceeding will be necessary in the near future to address the issue of continued health-insurance coverage for the daughter, who was just two years from graduating high school at the time of the hearing, if the trial court's judgment is not reversed on this issue. However, the parties did not seek from the trial court a determination of their liabilities with regard to the children's postminority educational support. Further, attempting to avoid the necessity of a possible future modification proceeding regarding postminority educational support is not an appropriate basis for reversing a judgment. Therefore, we decline to hold the trial court in error for failing to include in its divorce judgment a provision requiring the husband to maintain health insurance on the parties' children past the age of majority.
The wife also challenges on appeal the trial court's property-division and alimony awards. The issues pertaining to an award of alimony and a property division are interrelated, and courts must consider them together. Albertson v.Albertson, 678 So.2d 118 (Ala.Civ.App. 1996); Welch v.Welch, 636 So.2d 464 (Ala.Civ.App. 1994). Therefore, the entire judgment must be reviewed to determine if there has been an abuse of discretion; however, the trial court's judgment will not be disturbed on appeal except when it has abused its discretion. Parrish v. Parrish, 617 So.2d 1036, 1038
(Ala.Civ.App. 1993). A trial court's judgment based on its findings reached after its consideration of ore tenus evidence is presumed correct and will not be disturbed on appeal unless it is plainly and palpably wrong. Hartzell v. Hartzell,623 So.2d 323 (Ala.Civ.App. 1993). That presumption of correctness is based on the trial court's being in the unique position to observe the witnesses and to assess their demeanor and credibility. Hall v. Mazzone, 486 So.2d 408
(Ala. 1986). Factors the trial court should consider in its award of alimony and in its division of property include the earning ability of the parties; their ages and health; their station in life; the marital properties and their sources, values, and types; and the *Page 744 
conduct of the parties in relation to the marriage. Robinsonv. Robinson, 795 So.2d 729 (Ala.Civ.App. 2001). A division of marital property in a divorce case does not have to be equal, only equitable, and a determination of what is equitable rests within the sound discretion of the trial court. Golden v.Golden, 681 So.2d 605 (Ala.Civ.App. 1996).
In this case, the trial court equally divided the parties' jointly held accounts, thus awarding each party approximately $296,206 from those accounts. In addition, the trial court awarded the husband the $131,430 held in accounts solely in his name and the value and property associated with his law practice. The wife received the $120,000 in accounts solely in her name and the rights to her inheritance from her grandmother and in the family owned LLC. Each party received his or her vehicle valued at $10,000, the husband received a boat valued at $10,000, and the wife received the vast majority of the household furnishings that the husband valued at $100,000. In addition, the husband was ordered to pay the wife's attorney $25,000 as an attorney fee. Thus, with regard to the assets to which, the parties could assign a value, the husband received approximately $447,636 in assets, and the wife received approximately $551,206 in assets. Even disregarding the assets of the wife that could be said not to be marital assets (her inheritance and the accounts held solely in her name and not used for the common benefit of the marriage), the wife received approximately $431,206 in marital assets.
The wife was also awarded possession of the marital home, and the husband was ordered to be responsible for all mortgage indebtedness, taxes, and insurance on the home during the time the wife lives there. The trial court awarded the wife rehabilitative alimony in the amount of $3,000 per month for 18 months, and periodic alimony in the amount of $1,500 per month thereafter, in addition to possession of the marital home.
The wife argues that the trial court's property division and its alimony award are inequitable given the facts. She points out that the husband was awarded the substantial class-action fees, which the husband conceded was a marital asset. She also argues that the award of alimony fails to meet her expenses and that the difference in the parties' incomes justifies a greater award of alimony. We also note that, although she cites no authority, the wife contends that the trial court should have required the husband to provide a life-insurance policy to protect her right to alimony and to cover the payments on the marital home in the event of the husband's death. In response, the husband insists that the wife is capable of returning to work and contributing to her own support.
In this case, the husband was 43 years old at the time of the August 22, 2006, hearing, and the wife was 42 years old. The parties' marriage lasted approximately 17½ years. The husband is in good health and has a successful legal practice. The wife has a bladder condition that, at least to some degree, affects her daily activities and her ability to maintain certain jobs. The wife has not worked outside the home in more than 13 years, and she has expressed a desire to continue the arrangement initiated during the parties' marriage whereby she remains at home to take care of the parties' children.[1] *Page 745 
The trial court, in essence, equally divided the parties' marital property. Although the trial court awarded the wife rehabilitative alimony, that award was insufficient to allow the wife to meet her monthly expenses. Further, that award was for only 18 months, after which the wife's alimony would decrease to $1,500 per month. "[T]he purpose of alimony is to preserve, as closely as possible, the economic status quo of the parties after the divorce as it existed during the marriage."Horwitz v. Horwitz, 739 So.2d 1118, 1122
(Ala.Civ.App. 1999). We recognize that although the wife had not worked outside the home in approximately 13 years, the evidence supports a conclusion that the wife could contribute to some extent to her own support. However, in view of the husband's income and the resulting standard of living the parties' enjoyed during their marriage, we must conclude that the trial court's alimony award is inequitable. Accordingly, we reverse the judgment as to the issues of property division and alimony and remand the cause to the trial court to reconsider its property-division and alimony awards.
We note that in his brief on appeal the husband contends that receipt of the class-action fees might soon end. However, it was undisputed that the husband continued to receive those payments, which constituted a marital asset, at the time of the hearing and the entry of the judgment in this matter. If those payments should cease in the future, the husband would be free to seek a modification of his alimony obligation, if necessary, because an award of alimony is subject to modification upon a showing of changed circumstances. Kluever v. Kluever,656 So.2d 887, 889 (Ala.Civ.App. 1995); Treusdell v. Treusdell,671 So.2d 699 (Ala.Civ.App. 1995); see also McGugin v.McGugin, 357 So.2d 347, 350 (Ala.Civ.App. 1978) ("[A]wards of periodic alimony are never final and are amenable to change at any time depending on changed conditions.").
The divorce judgment is reversed and the cause is remanded for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMAS, J., concurs.
PITTMAN and BRYAN, JJ., concur in the result, without writings.
MOORE, J., recuses himself.
[1] The wife also cites the husband's adultery as a factor to be considered in the division of the marital property. Conduct that leads to the breakdown of the marriage may influence a trial court's property division. Lacaze v. Lacaze,621 So.2d 298 (Ala.Civ.App. 1993). We note, however, that the evidence would support a finding that the husband's affairs were not the cause of the breakdown of the parties' marriage.