MOORE, Judge.
Cheryl Perdue Freeman (“the former wife”) appeals from a judgment of the Montgomery Circuit Court in a postdi-vorce modification and contempt proceeding involving her and Charles Dewayne Freeman (“the former husband”). We affirm in part and reverse in part.

Procedural History

[1]

The parties were divorced by a judgment of the Montgomery Circuit Court on February 26, 2001. That judgment adopted and incorporated a settlement agreement (“the agreement”) between the parties, pursuant to which the former wife was awarded primary physical custody of the parties’ children and the former husband was awarded visitation and ordered to pay child support. The former wife was also awarded the marital residence, but she was ordered to pay the former husband a portion of the equity in the marital residence, the amount of which was to be determined by a procedure set out in the agreement.
On February 28, 2008, the former husband filed a motion to show cause why the former wife should not be held in contempt for her violation of certain provisions of the divorce judgment. He also requested that the former wife be ordered to pay his attorney fees and costs. On May 9, 2008, the former wife filed an answer and a counterpetition to show cause why the former husband should not be held in contempt for his violation of certain provisions of the divorce judgment. She also petitioned to modify, among other things, the former husband’s child-support obligation and his visitation with the parties’ children. The former husband answered the former wife’s counterpetition. Upon motion of the former wife, the trial court appointed a guardian ad litem to represent the interests of the children. A parenting coordinator was also appointed based on an agreement of the parties.
*943 Following ore tenus proceedings, the trial court entered a judgment on April 22, 2010, in which it, among other things, modified the former husband’s visitation with the children, modified the former husband’s child-support obligation prospectively from $1,500 to $1,700 a month, held the former wife in contempt for violating the divorce judgment and ordered her to pay the former husband’s attorney fees, determined the amount the former wife owed the former husband as his portion of the equity in the marital residence, declined to hold the former husband in contempt, and ordered each party to pay a portion of the fees for the guardian ad litem and the parenting coordinator. On May 24, 2010, the former wife filed a post-judgment motion;[2] that motion was denied by operation of law on August 23, 2010.[3] Rule 59.1, Ala. R. Civ. P. The former wife filed her notice of appeal on October 4, 2010.

Discussion

I. Visitation
A.
On appeal, the former wife first argues that the trial court erred in modifying the former husband’s visitation. She notes that the parties reached a settlement agreement on the visitation issue (“the visitation agreement”) and that the trial court’s judgment did not comport with that agreement because, she says, it did not require that the former husband submit to an “alcohol screen” and comply with any treatment recommendations resulting from that screen before the parenting coordinator considered allowing him to have overnight visitation with the children. We initially note that “[a] trial court may adopt or reject such parts of the [parties’] agreement as it deems proper from the situation of the parties as shown by the evidence.” Junkin v. Junkin, 647 So.2d 797, 799 (Ala.Civ.App.1994).
In the present case, before the trial, the parties, along with the parenting coordinator and the children’s guardian ad litem, both of whom had been appointed by the court, announced that the parties had reached a settlement as to the issue of visitation. The following exchange took place before the trial:
“THE COURT: All right. Here’s what it — see if this works. The [former husband] will submit to alcohol screen, follow any required treatment recommendations in order to have overnight visitation ... considered by the parenting coordinator.
“[COUNSEL FOR THE FORMER HUSBAND]: That’s great.
“[PARENTING COORDINATOR]: And it needs to put anger management in there, too, by alcohol — yes, ma’am. That’s correct.
“THE COURT: Okay. All right. Otherwise, daytime visits only. Does that clear that up?
“[COUNSEL FOR THE FORMER HUSBAND]: It does. Thank you. Your Honor.
“THE COURT: Well, we need to be clear.
*944 “[COUNSEL FOR THE FORMER HUSBAND]: Absolutely. We’d like to avoid motions to clarify.
“[COUNSEL FOR THE FORMER WIFE]: I’m clear.”
The trial court’s judgment stated the following with regard to the former husband’s visitation:
“Prior to trial, the parties advised the Court that they had reached an agreement regarding the visitation issue for the two minor children.... Said agreement is fully set forth below. The parties’ agreement provides that the Parenting Coordinator shall remain in place in the case and that he shall provide direction so as to make recommendations regarding the terms and conditions of the Former Husband’s visitation.
“B. Overnight visitation is suspended by agreement until certain terms and conditions are or can be worked out between the parties. Specifically, in order for the Former Husband’s visitation to increase from alternating Saturdays to overnight, the Former Husband has agreed to immediately enroll in and successfully complete an anger management course. After the completion of the anger management course the Former Husband shall file proof of completion with both counsel and the Court.
“E. The Former Husband shall submit to an alcohol or substance abuse screen and any required or recommended treatment thereafter if the result of said screening is positive.”
Although the judgment does provide that the former husband must submit to an alcohol or substance-abuse screening and any required or recommended treatment, we note that that requirement is not included as a condition to considering whether the former husband should be allowed overnight visitation with the children. Although there was limited testimony at the trial regarding the former husband’s alcohol use, at one point the trial court interrupted questioning by the former wife’s attorney regarding the former husband’s alcohol use and its effect on the children, pointing out that there was no need for evidence on that subject because the parties had settled that issue. Further, from the language of the judgment, it is clear that the trial court intended to enter a judgment comporting with the parties’ visitation agreement. Thus, we cannot conclude that the trial court decided to reject the parties’ visitation agreement based on the evidence adduced at the trial. See Junkin, supra. Accordingly, we reverse the judgment to the extent that it does not require the former husband to submit to an alcohol or substance-abuse screening and to participate in any required or recommended treatment as a condition to considering whether the former husband should be allowed overnight visitation with the children, and we remand this cause for the entry of a judgment that accurately reflects the parties’ settlement agreement on the issue of visitation.
B.
The former wife also argues that the trial court erred in including a provision requiring both parties to abstain from consuming alcoholic beverages while the children are in their custody because, she says, that provision deviated from the parties’ visitation agreement and there was no evidence regarding the former wife’s use of alcohol. We note, however, that the former wife failed to argue this issue to the trial court, and, thus, we cannot consider it on appeal. Kiel v. Kiel, 51 So.3d 1058, 1067 (Ala.Civ.App.2010) (“We cannot *945 reverse the trial court’s judgment on the basis of an argument that the [an appellant] did not present to the trial court.”); see also Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (“This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.”).
II. Discovery
The former wife next argues that the trial court exceeded its discretion by not allowing her to issue subpoenas duces tecum to the former husband’s business associates and clients. She also argues that the trial court exceeded its discretion by not allowing her to issue a subpoena duces tecum to the former husband’s accountant requesting information regarding the Subchapter “S” limited liability corporation of which the former husband is a shareholder. The former wife asserts that, because child support was at issue, evidence regarding the former husband’s income was discoverable. We conclude, however, that any error regarding the discovery of the former husband’s income was harmless. See Rule 45, Ala. R.App. P. In the present case, the former husband’s CS-41 “Child-Support-Obligation Income Statement/Affidavit” form, see Rule 32(E), Ala. R. Jud. Admin., indicated that he earns $13,951 per month. The former wife testified that she earns $1,402.23 per month. Thus, the parties’ “combined adjusted gross income,” see Rule 32(C), Ala. R. Jud. Admin., exceeds the uppermost limit of the child-support schedule set forth in Rule 32, Ala. R. Jud. Admin.,[4] and, thus, the amount of child support was required to be based on the needs of the children and the ability of the former husband to pay for those needs. See, e.g., Dyas v. Dyas, 683 So.2d 971, 973-74 (Ala.Civ.App.1995). The former wife testified that the children’s expenses are $4,556.55 per month. The former husband clearly has the ability to pay for those needs. Because the needs of the children were established and the ability of the former husband to meet those needs was also established, any further information regarding the former husband’s finances would be immaterial. Thus, we decline to reverse the trial court’s judgment on this issue. See Rule 45, Ala. R.App. P.
III. Child Support
A.
The former wife argues that the trial court exceeded its discretion by increasing the former husband’s child-support obligation by only $200 per month. As noted previously, the parties’ combined adjusted gross income exceeds the uppermost limit of the child-support schedule set forth in Rule 32.
“When the combined adjusted gross income exceeds the uppermost limit of the child support schedule, the amount of child support awarded must rationally relate to the reasonable and necessary needs of the child, taking into account the lifestyle to which the child was accustomed and the standard of living the child enjoyed before the divorce,[2] and must reasonably relate to the obligor’s ability to pay for those needs.... To avoid a finding of an abuse of discretion on appeal, a trial court’s judgment of child support must satisfy both prongs.
*946 Dyas, 683 So.2d at 973-74.
In the present case, at the time the agreement was entered between the parties in the original divorce proceedings, the former wife was employed with the State of Alabama; the former husband was unemployed at that time. The former wife was laid off from her job with the State in December 2003; she testified that she had been earning $52,900 a year at that time. After she was laid off, the former wife started a business that has never become profitable and has also worked part-time jobs. In August 2009, the former wife secured a position as a media aide for Carr Junior High School earning $16,824 per year, her highest income since she was laid off from her job with the State. As noted previously, the former husband’s CS-41 form indicated that he earns $13,951 per month. The former wife testified that the children’s needs have increased tremendously since the parties’ divorce. She testified that the children’s actual expenses are $4,556.55 per month and introduced documentation supporting her testimony. She testified that she had been able to afford those expenses with help from her parents, who had recently died, but that she had also incurred some credit-card debt. She also testified that she had been able to hire a person to clean her house occasionally and that she has someone cut her grass.[5] The former husband testified that he had given the former wife extra money for the children periodically, but not every time he was asked.
In support of her argument, the former wife cites McGowin v. McGowin, 991 So.2d 735 (Ala.Civ.App.2008) (plurality opinion). In McGowin, the main opinion held that the trial court had exceeded its discretion in setting a child-support obligation that was less than the undisputed reasonable needs of the children when the husband was able to meet those needs. 991 So.2d at 743. We conclude that the present case is distinguishable from McGowin because McGowin was an original divorce action and, thus, the needs of the children were established while the parties were married. As noted previously, this court has held that “[i]f an obligor participates in and agrees to a certain lifestyle for a child during a marriage, then that obligor should be expected to contribute to the reasonable and necessary needs of the child for the continuation of that lifestyle after divorce.” Dyas, 683 So.2d at 973-74 n. 2.
In Holman v. Holman, 435 So.2d 98, 101-02 (Ala.Civ.App.1983), this court held that a trial court had not exceeded its discretion in increasing child support by only $175 per month even though the obli-gee had testified that “her expenses incurred in maintaining the household [had] increased from $7,845.75 in 1975 to $19,621.45 in 1981” and the obligor’s income had increased from $33,900 to $52,980 during that same period. Similarly, in the present case, we cannot conclude that the trial court exceeded its discretion in increasing the former husband’s monthly child-support obligation by only $200 *947 despite the former wife’s testimony regarding the children’s increased expenses.
In Cassick v. Morgan, 628 So.2d 862, 864 (Ala.Civ.App.1993), a case cited by the former husband in his brief to this court, this court stated that “[exorbitant spending in itself is not sufficient to prove a substantial change in circumstances; instead, it is the increased needs of the child coupled with the parent’s ability to pay.” In the present case, the former wife did not testify as to what specific needs of the children had increased since the divorce, nor did she testify as to what the children’s expenses were at the time of the divorce. She simply stated that their needs had increased and that she had spent $4,556.55 per month on the children. The $4,556.55 in expenses included $800 per month for extracurricular activities and miscellaneous expenses. As pointed out on cross-examination, the former wife included in the children’s expenses $542 for Christmas cards, $125 for deer processing, and $332.67 for the children’s portion of a family vacation to the Cayman Islands. The former wife’s CS-41 forms from the original divorce proceedings and from this action indicate that the children’s monthly health-insurance premium had increased from $164 to $322.94 but that her child-care expenses had decreased from $850 to nothing.
Based on the foregoing, we conclude that the trial court could have found that the children’s reasonable and necessary expenses had not increased as much as the former wife indicated and that the $4,556.55 amount was merely the result of exorbitant spending on the part of the former wife. Cassick, supra. The trial court could have also concluded that, although the former husband testified that he had given the former wife additional money from time to time, the former wife had been able to pay for the children’s expenses and, thus, was able to contribute more to the children’s needs than her stated income indicated. See, e.g., Cassick, 628 So.2d at 864 (noting that “the record does not indicate ... that the wife is unable to meet her share of [the children’s] costs”). Accordingly, we decline to reverse the trial court’s judgment as to the issue of the amount of child support.[6]
B.
The former wife also argues that the trial court exceeded its discretion by failing to modify the former husband’s child-support obligation retroactively. “The determination to modify child support retroactively is a decision committed to the sound discretion of the trial court.” Nave v. Nave, 942 So.2d 372, 379 (Ala.Civ.App.2005). “The determination whether an award of retroactive child support is appropriate is dependent on the specific facts of the case.” Willis v. Willis, 45 So.3d 347, 349 (Ala.Civ.App.2010). In the present case, as the former husband points out, the trial was continued at least three times at the request of the former wife or her attorney. Thus, we cannot conclude that the trial court exceeded its discretion in declining to modify the former husband’s child-support obligation retroactively. See Volovecky v. Hoffman, 903 So.2d 844, 850 (Ala.Civ.App.2004) (in which this court considered request for a continuance by obligee’s attorney as a factor in determining that the trial court had not exceeded its discretion in declining to modify the *948 father’s child-support obligation retroactively).
IV. Contempt — Former Wife
The former wife next argues that the trial court exceeded its discretion by finding her in contempt. With regard to the parties’ former marital residence, the agreement that was incorporated into the divorce judgment provided:
“12. REAL PROPERTY:
“a. ... The Parties agree that the [former] wife shall be the sole and absolute owner of the marital home, subject to the existing first mortgage.
“b. The [former] wife shall be responsible for any mortgage indebtedness on the property, including repairs and maintenance, and shall hold the [former] husband harmless therefrom.
“c. The [former] husband shall execute all documents necessary to convey all his right, title, and interest in the real property to the [former] wife.
“d. Upon the expiration of three (3) years from the date of the final decree of divorce [i.e., in February 2004], the parties shall obtain and equally divide the cost of a professional real estate appraisal of the marital residence, in order to determine the fair market value at that time. The [former] wife shall then execute a note to the [former] husband, payable no later than the eighth (8th) anniversary of the final decree of divorce, or until the [former] wife remarries, whichever first occurs, in the amount of half of the equity in the marital residence....
“e. The [former] wife shall give the [former] husband a second mortgage on the property to secure the note described in the immediately preceding paragraph.
“f. The [former] wife will cooperate in any and all efforts to have the [former] husband’s name removed from the existing note and first mortgage within one year from the date of the final decree, and will sign any document intended for that purpose, provided that the [former] wife shall not be obligated to incur any cost in so doing. The [former] wife agrees to investigate the possibility of refinancing the marital residence into her name, and to make application for refinancing if it should be feasible and economically advantageous for her to do so.”
At the trial, the former husband introduced copies of several letters he had had his attorney send the former wife regarding the foregoing provisions. Specifically, the first letter, which was dated December 6, 2004, several months after the February 2004 triggering date for the parties to have the appraisal conducted, requested that the former wife suggest an appraiser to conduct the appraisal contemplated in paragraph 12.d. of the agreement. The former husband testified that the former wife had not responded to those letters.[7] A paralegal who worked for the former husband’s attorney testified that the former wife had telephoned the attorney’s office after she received the first letter and that the former wife had stated that she was unemployed, that she had some medical bills that she had not submitted to the former husband, that there were medical-insurance premiums due that she had not paid, and that therefore she was not responsible. The former wife, on the other hand, testified that she had telephoned the former husband’s attorney and that he had *949 not returned her call. When asked if she could dispute the former wife’s testimony that she had asked for the attorney to return her telephone call, the paralegal stated that she could not.
The former wife also testified that she had told the former husband that, since she was unemployed, if he would pay for the appraisal, she would reimburse him for half of the appraisal fee. The former husband, however, denied that the former wife had asked him to pay the appraisal fee. The former wife also testified that the former husband had refused to discuss the appraisal and that he later had told her to disregard his attorney’s letters. She testified that she could not comply with her obligations because the former husband would not cooperate in determining the amount of his equity. The former wife testified that in 2006 she had the marital residence appraised and that she had contacted the former husband but that he had refused to discuss the issue with her.
The trial court found:
“9. That the Former Wife is hereby found in willful contempt of Court for her willful failure or refusal to comply with [the agreement]. The Former Wife agreed to provide the Former Husband a second mortgage on the ... marital residence and secure the note.... The Former Husband executed a Quitclaim/Warranty Deed in favor of the Former Wife which divested him of all right, title and interest in the marital residence but subject to payment of his equitable interest. The terms and conditions are fully set out in the parties’ agreement. The Former Wife agreed to secure a second mortgage on the home in favor of the Former Husband within three years of the Final Decree of Divorce and fully pay the Former Husband his full equitable interest not later than eight years post-divorce. That time has come and gone and is the basis of the Former Husband’s contempt petition pending before this Court. It is undisputed that the Former Wife refinanced the marital home, increased the amount of the mortgage by more than $42,000, added a second mortgage to the home but failed to pay the Former Husband any equity as agreed.”
The former wife first specifically argues that she did not willfully fail to pay the former husband his portion of the equity because, she says, the trial court extended the time for her to make that payment. See Rule 70A(a)(2)(D), Ala. R. Civ. P. (‘“Civil contempt’ means willful, continuing failure or refusal of any person to comply with a court’s lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with.” (emphasis added)). The record reveals that, at a motion hearing on January 7, 2009, the following exchange took place:
“[ATTORNEY FOR THE FORMER HUSBAND]: Your Honor, there’s one outstanding issue I’m concerned about. The final hearing is set for March 12th, but the order that we’re here on, the marital equity — the equity in the marital residence is due by February. So does the [former] wife pay, and if she does, how much?
“THE COURT: No. Unless you and [the attorney for the former wife] can agree on something with regard to that issue, I think we have to hear it on March 12th. And quite frankly, if you want to hear that issue only on March 12th, then we can do that. But I think until I hear it, unless you agree, I’m going to extend the time and will not hold [the former wife] in contempt of Court because she didn’t do it by the 26th of February when there are things *950 that have been filed. We’ll take a look at the totality of those circumstances.”
Based on that exchange, we conclude that, to the extent that the trial court held the former wife in contempt for failing to pay the former husband his portion of the equity in the marital residence, it exceeded its discretion in doing so.
The former wife also argues that the trial court exceeded its discretion to the extent that it held her in contempt for borrowing additional funds when she refinanced the first mortgage on the marital residence. We agree. There was no provision in the agreement prohibiting the former wife from doing so. Thus, the trial court exceeded its discretion to the extent that it held the former wife in contempt for her borrowing additional funds when she refinanced the first mortgage on the marital home.
The former wife further argues that the trial court exceeded its discretion by finding her in contempt for her failure to give the former husband a second mortgage. We note, however, that much of the evidence was disputed on that issue. “In ore tenus proceedings, the trial court is the sole judge of the facts and of the credibility of the witnesses, and it should accept only that testimony which it considers worthy of belief.” Clemons v. Clemons, 627 So.2d 431, 434 (Ala.Civ.App.1993). It was undisputed that the former wife had not executed a second mortgage in the former husband’s favor. The trial court could have believed that the former husband had made an effort to comply with the agreement, albeit not until December 2004, and that the former wife had not. The trial court could have also disbelieved the former wife’s testimony that, after she had obtained an appraisal in 2006, she contacted the former husband to discuss the issue. Thus, the trial court could have concluded that the former wife willfully failed to comply with the provision regarding the second mortgage. We cannot conclude that the trial court exceeded its discretion in finding the former wife in contempt with regard to that provision of the agreement.
The former wife also argues that the trial court erred by finding her in contempt for taking out a second mortgage on the marital residence because, she says, she did not know she was taking out a second mortgage. We note, however, that the trial court could have disbelieved the former wife’s testimony that she did not know she was taking out a second mortgage. Clemons, 627 So.2d at 434. By taking out a second mortgage, the former wife made it impossible to comply with the agreement by giving the former husband a second mortgage. Thus, we find no error in the trial court’s finding her in contempt as to this issue. See, e.g., Hudson v. Hudson, 494 So.2d 664, 666 (Ala.Civ.App.1986) (holding that contempt finding was proper where the former wife “attempted to directly thwart [the divorce judgment] and cloud the title [to certain marital property] by transferring her interest by deed to her sister”).
V. Former Husband’s Equity in the Marital Residence
The former wife also argues that the trial court exceeded its discretion in determining the amount of equity that the former husband is owed by the former wife. The agreement provided that the former husband’s equity “shall be determined by taking the fair market value and subtracting therefrom the then current first mortgage pay-off amount and the anticipated costs of sale, provided, however, that such anticipated costs shall not be greater than 7% of the then current fair market value.” The former wife notes *951 that the trial court accepted a calculation of the equity done by the former husband’s accountant; she argues that the accountant’s calculations do not comport with the agreement. Specifically, she notes that the former husband’s accountant did not take into account the anticipated costs of the sale.[8] She also notes that the former husband’s accountant added 5% interest per annum from February 2004 until December 2009. We agree that the calculation does not comport with the agreement. Thus, we reverse the trial court’s judgment to the extent that it determined the former husband’s portion of the equity in the marital residence, and we remand the cause to the trial court. See Meyer v. Meyer, 952 So.2d 384, 391 (Ala.Civ.App.2006) (quoting Van Allen v. Van Allen, 812 So.2d 1276, 1277 (Ala.Civ.App.2001), quoting in turn R.G. v. G.G., 771 So.2d 490, 494 (Ala.Civ.App.2000)) (“ ‘ “An agreement that by its terms is plain and free from ambiguity must be enforced as written.” ’ ”). On remand, the trial court is instructed to recalculate the former husband’s portion of the equity in accordance with the agreement and this opinion.
VI. Contempt — Former Husband
The former wife next argues that the trial court exceeded its discretion by declining to hold the former husband in contempt. First, she specifically argues that the former husband violated the provision in the agreement requiring him to maintain the children as beneficiaries of his life-insurance policy and to provide to her annually proof that they were designated as beneficiaries. In its judgment, the trial court stated that the parties had advised it that the issue of the former husband’s failure to comply with the provision regarding life insurance was moot because he was in compliance at the time of the trial. As the former wife points out, however, there is nothing in the record to suggest that the former wife had abandoned her contempt claim as to this issue. Accordingly, we reverse the trial court’s judgment, and we remand the cause for the trial court to determine from the evidence whether the former husband should be held in contempt as to this issue.
The former wife also specifically argues that the trial court exceeded its discretion by declining to hold the former husband in contempt for violating certain provisions of the agreement by not treating her child from a previous marriage as a coequal to the parties’ children, by calling her ugly names, and by denying the former wife reasonable telephone access to the children when they were in the former husband’s care. We note, however, that the trial court did not make specific findings of fact on those issues, and the former wife did not present those arguments in her post-judgment motion. Accordingly, we cannot consider her arguments on those issues. See New Props., L.L.C. v. Stewart, 905 So.2d 797, 801-02 (Ala.2004) (“[I]n a nonju-ry case in which the trial court makes no specific findings of fact, a party must move for a new trial or otherwise properly raise before the trial court the question relating to the sufficiency or weight of the evidence in order to preserve that question for appellate review.”).
The former wife also argues that the former husband was in contempt of the trial court’s pendente lite order requiring that neither party consume alcohol in the presence of the children. We note, howev *952 er, that the former wife did not move to hold the former husband in contempt on that issue. Further, the trial court did not make a specific finding on that issue, and the former wife did not argue that issue in her postjudgment motion. Thus, we cannot consider it. New Props., L.L.C., 905 So.2d at 801-02.
The former wife finally specifically argues that the trial court erred by failing to hold the former husband in contempt for his alleged failure to reimburse her 50% of the children’s medical expenses as required in the agreement. She also argues that the trial court erred in determining that the former husband did not have to reimburse her for his portion of the children’s expenses. The former husband argues that, with the exception of 1 or 2 times, the former wife had failed to provide him with proof of the claimed expense within 30 days of the date the bill was incurred, as required by the agreement. He also notes that some of the expenses were for orthodontic services, that the agreement provided that the former wife must discuss the need for orthodontic services before incurring those charges, and that the former wife had not discussed the orthodontic services with him.[9] It was undisputed that the former wife had submitted a medical expense for a visit to PriMed within 30 days after it was incurred and that the former husband had declined to pay his share of that expense.
The trial court found that the agreement required the former wife to maintain health insurance for the parties’ children. The evidence indicated that the former wife had lost her job and, therefore, her health insurance. The former husband testified that he had agreed to cover the children under his health-insurance policy, that the former wife was to reimburse him for the increase in premiums, and that the former wife had failed to reimburse him.[10] In the judgment, the trial court determined that the amount the former husband had paid for the health-insurance premiums offset the amount the former husband owed for his share of the children’s medical bills. We can find no error in that reasoning. Thus, we cannot conclude that the trial court erred by declining to hold the former husband in contempt and by declining to order the former husband to reimburse the former wife 50% of the medical expenses that had been incurred by the children.
VII. Attorney Fees
The former wife argues that the trial court exceeded its discretion by ordering her to pay the former husband’s attorney fees and in declining to order the former husband to pay her attorney fees. The agreement provided, in pertinent part:
“19. ENFORCEMENT: If either party violates any provision of this Agreement they shall, upon a judicial determination of such violation, be responsible of payment of all costs, expenses, and attorneys’ fees incurred by the other party in connection with the enforcement hereof.”
*953 “Attorney fees are recoverable when provided for in a contract.” Knox Kershaw, Inc. v. Kershaw, 552 So.2d 126, 129 (Ala.1989). We have previously determined that the trial court exceeded its discretion in determining that the former wife was in contempt for violating various provisions of the agreement. We have also determined that the trial court erred in determining that the issue whether the former husband is in contempt with regard to the life-insurance provision of the agreement is moot. The violation of the agreement is a relevant consideration in the determination whether to award attorney fees. We, therefore, reverse the trial court’s judgment to the extent that it ordered the former wife to pay the former husband’s attorney fees and declined to order the former husband to pay the former wife’s attorney fees. On remand, the trial court is to reconsider the issue of attorney fees.
VIII. Guardian ad Litem and Parenting Coordinator Fees
The former wife finally argues that the trial court exceeded its discretion by ordering her to pay 50% of the guardian ad litem’s fee and 40% of the parenting coordinator’s fee because, she says, the former husband’s conduct necessitated the involvement of the guardian ad litem and the parenting coordinator and because the former husband’s income is greater than hers. She points to the report of the guardian ad litem, which states, in pertinent part:
“[The former wife] has put forth a good faith attempt to try to work with [the former husband] in accommodating his visitation with the children, and in trying to promote their relationship with him. However, I believe that it is highly unlikely that any progress will be made unless and until [the former husband] seeks treatment for his alcohol and anger issues.”
We note, however, that the former wife requested the appointment of the guardian ad litem, and the parties agreed to the appointment of the parenting coordinator. Further, because the parties reached a settlement on the issue of visitation, there was limited evidence presented regarding that issue. Although the former husband earns substantially more than the former wife, the evidence of the former wife’s spending habits shows that the former wife had more income available than her stated income indicated. Accordingly, we cannot conclude that the trial court exceeded its discretion in its apportionment of the fees for the guardian ad litem and the parenting coordinator.

Conclusion

Based on the foregoing, we reverse the trial court’s judgment to the extent that it modified the former husband’s visitation; held the former wife in contempt for failing to pay the former husband his portion of the equity in the marital residence and for borrowing additional funds when she refinanced the first mortgage on the marital residence; determined the amount of the former husband’s portion of the equity in the marital residence; held that the former wife’s claim for contempt regarding the former husband’s alleged failure to comply with the provision of the agreement concerning life insurance was moot; and determined the parties’ entitlement to attorney fees. The trial court’s judgment is affirmed in all other respects. We remand this cause for the entry of a judgment in accordance with this opinion.
The former wife’s request for the award of an attorney fee on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
*954 THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
BRYAN, J., concurs in part, concurs in the result in part, and dissents in part, with writing.

. Only the procedural history relevant to the issues on appeal is included.

. The 30th day after April 22, 2010, was May 22, 2010, which fell on a Saturday. Thus, pursuant to Rule 6(a), Ala. R. Civ. P., the time for filing a postjudgment motion was extended until Monday, May 24, 2010.

. The 90th day after May 24, 2010, was August 22, 2010, which fell on a Sunday. Thus, pursuant to Rule 6(a), Ala. R. Civ. P., the former wife’s postjudgment motion was deemed denied by operation of law on Monday, August 23, 2010. See First Alabama Bank v. McGowan, 758 So.2d 1116 (Ala.Civ.App.2000), and Richburg v. Cromwell, 428 So.2d 621 (Ala.1983).

. The preface to Rule 32 states that the amended rule applies to “all new actions filed or proceedings instituted on or after January 1, 2009. Any actions or proceedings instituted before January 1, 2009, shall be governed by Rule 32 as it read before January 1, 2009.” The present proceeding was instituted before January 1, 2009; thus, Rule 32 as it read before January 1, 2009, is applicable in this case.

"2 We distinguish divorce proceedings from modification proceedings because we have held that exorbitant spending in itself is not sufficient to prove a substantial and continuing change in circumstances in order to modify a prior judgment of support. Makar v. Makar, 643 So.2d 1378 (Ala.Civ.App.1994). If an obligor participates in and agrees to a certain lifestyle for a child during a marriage, then that obligor should be expected to contribute to the reasonable and necessary needs of the child for the continuation of that lifestyle after divorce.”

. She testified that the former husband was awarded the parties’ lawn mower in the divorce.

. The former wife also argues that the trial court improperly considered the fact that her child from a previous marriage had attained the age of 19 years even though, pursuant to the agreement, the former husband had not been required to support that child. We note, however, that the former wife failed to argue this issue to the trial court, and, thus, we cannot consider it on appeal. Kiel, supra; and Andrews, supra.

. Although the former husband testified that he had had his attorney send the letters, he admitted that he had never asked the former wife if he could send an appraiser to the marital residence.

. The former husband argues that, because the marital residence was not on the market, this provision was not applicable; however, as the former wife notes, the agreement does not require the marital residence to be on the market in order to trigger the application of that provision.

. We note that the former wife testified that she had discussed the orthodontic services with the former husband when each child had to have braces. She testified that, when their daughter had to have braces, the former husband stated that he was paying the health-insurance premiums and that he would not pay anything else. She testified that, when their son had to have braces, the former husband stated that he did not "give a damn if he had braces.”

. The former wife denied that she had agreed to pay the former husband for the premiums. The trial court, however, could have believed the former husband's testimony. See Clemons, supra.