[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 559 
Michael Joseph Sosebee ("the husband") and Linda L. Sosebee ("the wife") were divorced in 2000 after 27 years of marriage. The parties had one child, a daughter, whose custody was awarded to the wife. The husband was awarded the right to claim the federal income-tax dependency exemption ("the tax exemption") for the daughter. The wife was awarded possession of the marital residence; she was required to pay one-third of the mortgage payment on the house (approximately $333), while the husband was ordered to pay two-thirds of the payment (approximately $666). The provision of the divorce judgment regarding the division of the mortgage payment reads, in part, as follows: "[The husband's] amount shall be payable as alimony and shall continue past the due date of mortgage pay off and shall be subject to modification after mortgage debt is extinguished." After the marital residence was sold in April 2001, the husband stopped making the $666 payment.
In April 2001, the wife filed a petition, seeking an award of alimony, the ability to claim the tax exemption for the daughter, and to hold the husband in contempt for failing to maintain a life-insurance policy as directed in the original divorce judgment. The husband answered and counterclaimed, requesting that he be given certain photographs and videos, requesting that the wife reimburse him for charges to certain accounts made after the divorce, and denying that the wife needed alimony. The wife later amended her petition to include a contempt allegation based on the husband's failure to pay alimony pursuant to the mortgage/alimony provision in the original divorce judgment.
After a trial, the trial court found the husband to be $16,675 in arrears in alimony, ordered the husband to pay $600 per month in alimony to the wife, awarded the wife the right to claim the tax exemption for the daughter in every other year, and required each party to produce proof of life insurance naming the daughter as a beneficiary as required by the original divorce judgment. The judgment also awarded the wife an attorney fee of $1,050. After considering the husband's postjudgment motion, the trial court rescinded the requirement that the husband maintain health insurance on the daughter and life insurance for the daughter's benefit but left the remainder of the judgment unchanged. The husband appeals, arguing that his alimony obligation should be terminated, that he owes no alimony arrearage, that the wife could not have been awarded the right to claim the tax exemption for the daughter because the trial court could not modify that particular provision of the original divorce judgment, and that the trial court erred by awarding the wife an attorney fee.
We will first consider whether the trial court correctly determined that the husband owed $16,675 in past-due alimony. The husband argues that the above-quoted language from the mortgage/alimony provision in the original divorce judgment required the wife, if she desired alimony, to request that the court set an amount of alimony after the husband's duty to pay the mortgage was extinguished. The wife, however, argues that the mortgage/alimony provision required the husband to continue to pay the $666 he had been paying on the mortgage payment to the wife as alimony, pending any modification of that amount by the court on a petition filed by either party. *Page 560 
A trial court has the inherent power to interpret and enforce its own judgments. See, e.g., Gild v. Holmes, 680 So.2d 326,329 (Ala.Civ.App. 1996); Grayson v. Grayson, 628 So.2d 918, 919
(Ala.Civ.App. 1993). "Judgments . . . are to be construed like other written instruments. . . . The legal effect must be declared in light of the literal meaning of the language used."Wise v. Watson, 286 Ala. 22, 27, 236 So.2d 681, 686 (1970). That is, the unambiguous terms of a judgment, like the terms in a written contract, are to be given their usual and ordinary meaning. See Thornton v. Elmore County Bd. of Educ.,882 So.2d 855, 858 (Ala.Civ.App. 2003) (quoting State Pers. Bd. v. Akers,797 So.2d 422, 424 (Ala. 2000)).
Although the husband urges us on appeal to hold that the mortgage/alimony provision clearly contemplates the wife's requesting alimony prior to his being required to pay alimony, we do not read the language of the provision as placing such a requirement on the wife. The mortgage/alimony provision states that the amount the husband was required to pay "shall be payable as alimony." It further provides that the husband's alimony obligation "shall continue past" the extinguishment of the mortgage and that the amount of alimony "shall be subject to modification after mortgage debt is extinguished." The husband's tortured reading of the mortgage/alimony provision — that he was not required to pay alimony after the mortgage was extinguished unless and until the wife sought an alimony award from the trial court — does not comport with the usual and ordinary meaning of the language used. Quite simply, the mortgage/alimony provision is not capable of any construction other than the one advanced by the wife and adopted by the trial court. Therefore, we affirm that portion of the trial court's judgment determining that the husband owes the wife $16,675 in past-due alimony payments.
The husband's second argument is that his alimony obligation should have been terminated. He says that the wife has no need for alimony because the wife is in a better financial position than she was at the time of the divorce and that he does not have the income necessary to pay the amount awarded in the judgment. In addition, he points out a mathematical error in the wife's expense computations. Finally, he argues that the trial court's alimony award is based on the amount of money the wife testified she spent on the daughter each month.
 "An obligation to pay alimony may be modified only upon a showing of a material change in circumstances that has occurred since the trial court's previous judgment, and the burden is on the party seeking a modification to make this showing. Thus, the moving party must show a material change in the financial needs of the payee spouse and in the financial ability of the payor spouse to respond to those needs."
Glover v. Glover, 730 So.2d 218, 220 (Ala.Civ.App. 1998) (citation omitted). A trial court is not, however, required to modify alimony because of a change in the circumstances of the parties. Kiefer v. Kiefer, 671 So.2d 710, 711 (Ala.Civ.App. 1995). The court should still consider the earning capacity of each spouse, the payee spouse's need for alimony, the payor spouse's ability to pay alimony, and each spouse's estate.Kiefer, 671 So.2d at 711. "[T]he purpose of periodic alimony is to support the former dependent spouse and enable that spouse, to the extent possible, to maintain the status that the parties had enjoyed during the marriage, until that spouse is self-supporting or maintaining a lifestyle or status similar to the one enjoyed during the marriage." O'Neal v. O'Neal, 678 So.2d 161, 164
(Ala.Civ.App. 1996). However, "[t]he amount awarded to one spouse should not `cripple' the other *Page 561 
spouse." Daugherty v. Daugherty, 579 So.2d 1377, 1380
(Ala.Civ.App. 1991); see Rubert v. Rubert, 709 So.2d 1283,1284-85 (Ala.Civ.App. 1998). Although a trial court's judgment on an alimony-modification petition is presumed correct, this court can reverse a trial court's judgment if it is not supported by the evidence, is plainly and palpably wrong, and amounts to an abuse of discretion. Id.
The wife is employed by the Etowah County Board of Education as a media specialist at Gaston Elementary School. Her employment income is $37,750. She testified that her monthly expenses regularly exceed her monthly income; a review of her monthly expense exhibit, which shows her monthly income minus her monthly expenses from April 2002 to January 2003, reveals monthly deficits ranging from $52.71 to $2,298.03. Appended to the wife's type-written exhibit are handwritten monthly records of the amount paid for each of her expenses. She testified that, on average, her monthly deficit for the 10-month period was $500.
The husband correctly points out, however, that the wife's mathematical calculations for the month of April 2002 are off by $1,800. Although the wife's calculations indicate that she had expenses that month totaling $4,748.03, a recalculation of the entries on the exhibit totals $2,948.03. The wife's monthly deficit for April 2002 then, based on the correct figure, is $498.03, not $2,298.03. Thus, the husband contends, the wife's testimony that she had an average monthly deficit of $500 is not supported by the documentary evidence. The husband contends that the wife's average monthly deficit is actually $266.93. However, when the monthly deficits are averaged with the correct figures for April 2002, the wife's average monthly deficit is, according to our computations, $348.30.
Among the wife's typical monthly expenses are a $547 mortgage payment, $534 in automobile payments (apparently for two automobiles — hers and the daughter's), and $201 for insurance (although it is unclear whether that includes homeowners' and automobile insurance or is for only one or the other). According to the wife's handwritten monthly records, the wife's monthly power bill ranged from $83 to $225, and she paid amounts ranging between $12.14 and $25.83 for cellular telephone service and amounts ranging between $53.75 and $135.88 for home telephone service. She also gave as much as $200 in one month to her church; other months, however, she gave lesser amounts or nothing. She also pays $255 per month for college expenses for the daughter. The wife testified that she owned one-half of 150 acres she estimated to be worth approximately $120,000, $20,000 in certificates of deposit, $2,500 in savings accounts, and $400 in a checking account.
The husband is an instructor at Gadsden State Community College. He also teaches a night class at Gadsden State and a night class at Jefferson State Community College in Birmingham. His annual gross income is $82,500. He testified concerning his expenses, as well, indicating that his net monthly expenses of $4,001 are almost equal to his net monthly income from both of his teaching positions of $4,012.[1] At the time of trial, according to the husband, he had approximately $200 in a savings account and $800 in a checking account. He *Page 562 
owns no property and no certificates of deposit. His expenses include over $200 per month on gasoline, a $136 mobile-home payment, a $516 automobile payment, a $138 automobile insurance payment, $53 for home telephone service, $19.95 for Internet service, a total of $90 for cellular telephone service for both him and his current wife, and utility payments of $212. He also pays a total of $523 monthly for the daughter's college expenses.
Both the husband and the wife, based on their respective exhibits and testimony, appear to be living "paycheck to paycheck." The wife, according to her testimony and documentary evidence, has a shortfall every month. She is responsible for a house payment, costs associated with the daughter's education, and typical living expenses such as utility payments, transportation expenses, and grocery expenses. None of the wife's expenses appear especially exorbitant. However, as the husband points out, some of the wife's expenses were actually those of the daughter. The wife's additional expenses related to the daughter include the monthly payment and insurance on the daughter's automobile and purchasing clothing for the daughter; the wife testified that, on average, she spent between $550 and $600 per month on the daughter's expenses, and that, during months in which she purchased clothing for the daughter, the expenses could be as much as $700.
The wife's expenditures for the daughter are gratuitous undertakings of the wife that the husband may not be held responsible for through the payment of alimony to offset those expenditures. To allow a trial court to consider expenditures of that nature in fashioning its alimony award would permit, in essence, a trial court to require a parent to pay the living expenses of an adult child in contravention of the law. A parent is not required, absent an express agreement of the parties or other than as permitted under Ex parte Bayliss, 550 So.2d 986
(Ala. 1989), and its progeny or under Ex parte Brewington,445 So.2d 294 (Ala. 1983) (providing that a parent may be ordered to provide support for an adult disabled child), and its progeny, to pay support to cover the living expenses of an adult child.Whitten v. Whitten, 592 So.2d 183, 185 (Ala. 1991). Accordingly, we reverse that portion of the trial court's judgment ordering the husband to pay the wife $600 per month in alimony and remand the cause for further proceedings, which may include determining what, if any, amount of alimony might be warranted based upon the wife's expenses and the husband's income. The husband further argues that the trial court erred by awarding the wife the right to claim the tax exemption for the daughter in alternate years. He argues that the trial court has lost the ability to modify the award of the tax exemption because the daughter is over the age of 19 and no longer receives child support. He also argues that the wife failed to prove a change in circumstances warranting a modification of who may claim the tax exemption.
Indeed, the issue of who may claim the tax exemption is referenced in the child-support guidelines. See Comment to Rule 32, Ala. R. Jud. Admin. Typically, the tax exemption is awarded to the custodial parent; in fact, this court has held that the award of the tax exemption to the noncustodial parent is a deviation from the child-support guidelines and must be explained by the trial court in its judgment as required by Rule 32(a)(ii).See Flanagan v. Flanagan, 656 So.2d 1228, 1232 (Ala.Civ.App. 1995). The trial court awarded the husband the tax exemption in the original divorce judgment without comment.
In her modification petition, the wife requested the right to claim the tax exemption *Page 563 
because, she said, she was providing a larger percentage of the daughter's financial support. The wife's testimony and her expense lists indicated that she spent money on items such as books and clothing for the daughter and that she paid the daughter's automobile payment and automobile insurance. The trial court's judgment allows the wife to claim the exemption every other year.
The husband first argues that the award of the tax exemption is not modifiable because the daughter is over the age of majority and no longer receives child support. The underlying premise of his argument is that postminority-educational-support awards are not based upon the child-support guidelines, see Thrasher v.Wilburn, 574 So.2d 839, 841-42 (Ala.Civ.App. 1990), and, therefore, do not include items like the tax exemption, which are properly considered in cases involving child support for a minor child. However, although the tax exemption is, in the first place, associated with child support, we cannot see how the husband can argue that the award of the tax exemption is not modifiable after a child reaches the age of majority. Because Alabama permits awards of postminority-educational support, and because the federal government permits parents to utilize the tax exemption after a child reaches the age of majority until the age of 24 provided the child is a student and the parents continue to provide over half of the child's support,26 U.S.C. §§ 151(c)(1)(B)(ii) and 152(d)(2), it would appear that a more reasonable interpretation would be that the right to claim a child as a tax exemption would continue to be modifiable as long as the right to claim the exemption existed. Because the husband has cited no authority indicating that the award of the tax exemption, although available after the a child reaches age of majority, cannot be modified after that date, we will not reverse the trial court on that basis.
The husband also argues that the wife did not prove a change of circumstances warranting a modification of the award of the tax exemption. We disagree. The wife proved that she was expending approximately $550 to $700 per month on the daughter, including the $255 in college expenses the wife was required to pay pursuant to a postminority-educational-support order. The husband's prior child-support obligation was $527 a month, which presumably was used to defray the typical expenses incurred by the daughter — to purchase clothing or to pay for the daughter's automobile and insurance; he now pays $523 in postminority-educational support, all of which is applied to the expenses directly relating to the daughter's college education.
"We have held that the allocation of the dependency exemption is a matter of discretion for the trial court. . . . As in all discretionary matters, the judgment of the trial court will not be reversed on appeal absent a showing of abuse." Flanagan, 656 So.2d at 1232. In light of the wife's assumption of a majority of the daughter's living expenses, the husband has not convinced us that the award of the tax exemption to the wife in alternating years is an abuse of its discretion.
The husband's final argument is that the trial court erred in awarding the wife an attorney fee. He states that the trial court could not award an attorney fee under Ala. Code 1975, § 30-2-54, unless it found the husband in contempt for his failure to pay alimony, which the trial court did not do. The husband also correctly states that an attorney fee may not be awarded where the requesting party has not requested such a fee in the pleadings or where the issue was not tried by the express of implied consent of the parties. See Singleton v. Harp,689 So.2d 880, 883 (Ala.Civ.App. 1996). The husband *Page 564 
argues that the wife's request for an attorney fee in her pleadings related only to her request that he be held in contempt on the issue concerning his keeping in force certain life insurance for the benefit of the daughter. Thus, he argues, because he was not held in contempt, and because the wife did not request an attorney fee relating to any other issue, the trial court's attorney-fee award must be reversed.
We agree that § 30-2-54 precludes the award of an attorney fee to the petitioner in a contempt action when the trial court fails to make a finding of contempt against the defending party. See,e.g., Wiggins v. Wiggins, 601 So.2d 98, 99 (Ala.Civ.App. 1991) (discussing the statute and reversing an attorney-fee award where the trial court made no finding of contempt). However, "[a]n attorney fee is ordinarily available in a modification proceeding because it is merely an extension of the original divorce action, and such a fee may be awarded without a finding of contempt."See Singleton, 689 So.2d at 883. The wife did request a modification of the award of the tax exemption, and, although the request for an attorney fee arguably appears within the count of the wife's complaint dealing with the life-insurance issue, the request is also stated in the final paragraph of the wife's complaint. In addition, the wife testified in court that she had expended $1,649 in attorney fees, to which the husband's attorney responded by stipulating that $500 would be a reasonable fee. The husband was questioned about the wife's request for an attorney fee; he responded that he did not think he should be required to pay her an attorney fee. Thus, even if the wife's placement of her attorney-fee request in a particular count of her complaint would have limited her to collecting fees only under that count, we conclude that the parties tried the attorney-fee issue without any limitation as to what particular aspect of the case it pertained to.
However, because the trial court did not indicate its reason for awarding the wife an attorney fee, and in light of our reversal of the trial court's alimony award, we reverse the trial court's attorney-fee award. Upon remand, the trial court may reconsider whether the wife continues to be entitled to the $1,050 fee based upon the above-stated principles regarding attorney-fee awards. See Deines v. Deines, 424 So.2d 1334, 1335
(Ala.Civ.App. 1983) (noting that an attorney fee could be based upon that portion of the judgment concerning a modification of child custody, but reversing an attorney-fee award because this court could not determine what portion of the attorney-fee award was impermissibly based upon that portion of the judgment concerning past-due alimony when there was no finding of contempt).
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and THOMPSON and MURDOCK, JJ., concur.
PITTMAN, J., concurs in the result, without writing.
[1] Although the wife's counsel objected to the exhibit prepared by the husband outlining his monthly expenses on the ground that it violated the best evidence rule and although the trial court appeared to sustain the objection, the trial court allowed the husband to testify concerning the expenses listed on the exhibit, the wife's counsel cross-examined the husband on items listed on the exhibit, and the exhibit was received into evidence at the close of the trial.