DONALDSON, Judge.
Carl David Myers ("the husband") has appealed from a judgment of the Mobile Circuit Court ("the trial court") that, among other things, divorced him from Kimberly Berry Myers ("the wife"). The husband challenges the judgment insofar as it awards alimony to the wife, divides the parties' property, orders the husband to pay the private-school tuition for the parties' minor child, and fails to award joint legal custody of the child to the parties. We reverse the judgment and remand the cause.
Facts and Procedural History
The parties were married in 1993 and had two children born during their marriage, *58 L.M. ("the minor child") and W.M. ("the oldest child"). Only L.M. remained a minor at the time of the divorce proceedings.
The husband filed a complaint for a divorce in September 2015 in which he sought, among other things, an equitable division of the parties' property and an "appropriate determination concerning custody of and visitation with the parties' minor child." The wife filed an answer and a counterclaim for a divorce in which she asserted, among other things, that she "is the fit and proper person to be entrusted with [the minor] child's care and custody subject to supervised visitation" with the husband.
In December 2015, after holding an "office conference," on the parties' pending motions regarding visitation, the trial court granted the husband supervised visitation with the minor child. The trial court also ordered the family to submit to a psychological evaluation.
The trial court held a trial on September 30 and October 4, 2016. The testimony indicated that the husband had developed a successful veterinary practice during the parties' marriage. The husband testified that he gave the wife approximately $14,500 each month to deposit in the parties' joint bank account and that all of their expenses were paid from that account. The husband testified that, after he filed for a divorce, he began depositing $3,000 into the parties' joint account but that he had continued to pay all of their joint expenses. The husband testified that marital problems began in May 2015, when he told the wife to pay the oldest child's college tuition out of their savings account rather than his business account. The husband testified that "there was never enough" money for the wife during the marriage.
The husband was unable to answer many questions regarding his income or other financial matters and testified that his accountant had handled those issues. The accountant's testimony indicated that the husband earns the Social Security limit each year, which she testified is currently $118,000, but that he also receives stockholder dividends and rental income of $225,000. In 2015, the husband earned an income of $414,000. The evidence indicated that at the time of the trial, the husband had financial accounts totaling approximately $1 million.
The husband testified that he and the wife attended marriage counseling three times but that the wife had refused to go back to counseling. According to the husband, the wife and the children left the marital residence and moved in with the wife's parents in July 2015. The husband testified that he filed for a divorce in September 2015 because the wife had "done everything in her power to alienate my kids." The husband testified that he had been visiting with the minor child at a family-visitation center during the divorce proceedings and that it had been "terrible." The husband testified: "She cries, she's rude, she is disrespectful. She tells me she will never go anywhere with me, she will run away, she hates me."
The wife testified that the husband had provided financially for the family during the marriage and that she had stayed home with the parties' children for the majority of the marriage. The wife testified that she believed that the husband had had an affair approximately 10 years before the divorce action was commenced but that they had remained together. The wife also testified that the husband had "rage" problems, that he would become angry and had thrown items, but that he had not directly physically harmed her or the children.
*59 The wife testified that the husband would give her three checks totaling approximately $14,500 each month and that she would deposit the checks into their joint bank account. The wife testified that the husband had handled all the financial matters during the marriage and that she did not know how much income he earned until the divorce proceedings. According to the wife, the husband had not been very involved in the children's lives. The wife testified that, beginning in 2005, the husband was gone every weekend to participate in clay-shooting tournaments and that he began drag racing in 2012. The wife also testified that the husband, in recent years, had begun spending the majority of his time at work and at a home the parties owned in Dauphin Island. The oldest child also testified that the husband had often been absent from her and the minor child's lives and that she had "no relationship" with the husband. The oldest child recounted a few instances in which, she asserted, the husband had displayed "rage" and bizarre behavior.
The wife testified that she had relied on credit cards to pay her expenses since the divorce proceedings began. She testified that, although she intended to secure employment, she was not sure if or when that would happen. The wife asked the trial court to award her $3,000 in monthly child support, $10,000 in monthly periodic alimony, and half of all the parties' and the husband's financial accounts, among other things.
On October 13, 2016, the trial court entered an order divorcing the parties. That order provides, in pertinent part:
"2. By agreement of the parties, the primary residential custody of the minor child is awarded to the wife.
"3. The [husband's] visitation shall be as follows by agreement of the parties: He shall complete two more visitations at the Family Center. Then he shall have the following two Saturdays in a row from 9:00 a.m. to 5:00 p.m. He shall be accompanied by at least one of his relatives during the visitation. Thereafter, the visitation shall be standard visitation as set out below ....
"6. With respect to child support, the Court does award the wife child support in the amount of $2,000 per month ....
"....
"8. With respect to the private school ... the husband shall pay the private school tuition ... for the [minor] child for the remainder of this school year. He shall continue to pay the private school tuition pending further orders. However, if the visitation continues to be a problem still at the end of the school year, upon proper motions being filed with the Court, the Court will consider whether or not he shall be responsible for paying for the private school tuition solely.
"9. With respect [to] periodic alimony, the Court does award the wife $10,000 per month for five years and thereafter, she is awarded $7,000 per month. The Court does note that the husband earns over $700,000 per year and has additional benefits from his employment at this stage of his life and that the totality of circumstances make this award fair and reasonable.
"....
"11. With respect to the Hunter house, the wife shall have first right of refusal to buy the husband's interest out of same house for one-half of the equity in the house and assuming the refinancing of the mortgage into her sole name. If she does not exercise her first right of refusal within 90 days, the property shall be sold on the open market to the highest bidder. The wife shall be allowed to remain in the homeplace until it sells *60 and shall be responsible for the mortgage and property taxes and insurance and upkeep of the house pending the sale. If the husband pays the mortgage, he may deduct it from the alimony.
"12. With respect to the Dauphin Island house, the husband shall have first right of refusal to buy the wife's interest out of same house for one-half of the equity in the house and assuming the refinancing of the mortgage into his sole name. If he does not exercise his first right of refusal within 90 days, the property shall be sold on the open market to the highest bidder. The husband shall be allowed to remain in the Dauphin Island house until it sells and shall be responsible for property taxes and insurance and upkeep of the house pending the sale.
"13. In the event the houses are not purchased by the parties, the Court does reserve the right to appoint a Commissioner to sell the property to the highest bidder for cash and any profit or deficiency shall be shared equally by the parties.
"14. The Court does award the clinic building and lot to the husband.
"15. The Court does award the wife a judgment in the amount of $250,000 against the husband representing alimony in gross. The husband shall pay off same $250,000 to the wife as follows: $100,000 within three months and the balance within six months.
"16. The husband shall make arrangements for the professional corporation to convey the 2013 F150 to the wife and shall pay any indebtedness due thereon, if any. The husband shall make arrangements for his veterinarian professional corporation to convey the 2011 4-Runner to the parties' daughter, [W.M.].
"17. The husband shall be awarded all other interest in the veterinarian professional corporation, including the equipment and all assets, and shall be responsible for all indebtedness, if any.
"18. The husband is awarded the one-third interest in the boat, the golf-cart, the Seado, and the guns and the gun safe.
"19. The wife shall be responsible for her indebtedness with the Visa and American Express and the husband shall be responsible for any indebtedness in his name, if any.
"....
"21. With respect to the cash accounts, the husband shall immediately write a check to the wife from his personal checking account in the amount of $45,000. The husband shall write a check to the wife from his personal money market account in the amount of $100,000. The husband shall make arrangements for the wife to be awarded $200,000 from the PC money market account. The husband shall be awarded all other money in the PC.
"22. With respect to the retirement accounts, the wife shall be awarded the remaining money in her retirement account and shall be awarded $39,000 from the husband's retirement account. The wife shall be responsible for preparing the proper qualified domestic relations order to reflect the transfer of $39,000 from the husband's retirement account.
"23. With respect to the money in [the wife's attorney's] trust account, same money shall be held pending the hearing regarding the attorney's fee.
"24. The Court does set the attorney's fee hearing over to November 2, 2016 at 9:00 a.m. to determine how much attorney's fee the husband will be responsible for paying, if any."
We note that the failure of a judgment to adjudicate a claim for attorney's *61 fees does not ordinarily render that judgment nonfinal. Blythe v. Blythe, 976 So.2d 1018, 1020 (Ala. Civ. App. 2007). In this case, however, the trial court ordered that money contained in the wife's attorney's trust account, which consisted of proceeds from the wife's 401(k) account and was subject to division between the parties, be held pending a decision on the wife's request for an award of attorney's fees. Thus, the October 13, 2016, order was not a final judgment because it did not "completely adjudicate all issues between the parties." Faellaci v. Faellaci, 67 So.3d 923, 925 (Ala. Civ. App. 2011).[1]
The husband filed a motion seeking to alter, amend, or vacate[2] the October 13, 2016, order, in which he asserted, in part:
"2. The Court's order as it relates to custody of the minor child is incomplete and due to be amended. The order reflects an agreement was reached by the parties, but the order fails to state that the parties shall share joint legal custody of the minor child. The language of the order indicates an intent to award joint legal custody, but the order fails to specifically state such an award, and should be amended to clearly state the parties share joint legal custody as agreed ....
"....
"6. The Court further ordered the [husband] to continue paying the minor child's private school tuition pending further orders of the Court. Again, in light of the substantial child support award, into which educational expenses are factored by rule, and the substantial assets awarded to the [wife], the Court's order that the [husband] continue paying the private school tuition, particularly in light of the alienation evidence offered, is wholly inequitable and not supported by the evidence. Further, much like the analysis in the landmark [ Ex parte] Christopher [, 145 So.3d 60 (Ala. 2013),] decision, it is fundamentally unfair to order a divorced parent to pay for private school tuition when similarly situated married parents cannot be legally obligated to pay such private school expenses. Paragraph 8 of the Judgment of Divorce also violates the substantive and procedural rights of the Plaintiff-father which are, '... fundamental in nature and protected by the Due Process Clause of the Fourteenth amendment.' See generally Ex Parte E.R.G., 73 So.3d 634, 647 (Ala. 2011) (recognizing and enforcing the fundamental rights of parents). Said provision also violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution.
"7. The periodic alimony awarded to the [wife] in this matter is not supported by the evidence in this cause. No need for said sum was demonstrated by the evidence. The record is also devoid of any evidence to establish a standard of living which justifies the award of the amount of periodic alimony. The evidence was undisputed that the [wife] has a degree from a two-year college, she worked during the marriage, and she further testified that she was searching for full time employment with an intent to return to full time employment. In addition, although the [wife] claimed she needed $10,000.00 in spousal *62 support, she admitted that she spent upwards of $4,500.00 per month for the benefit of an adult child born of the marriage, including $1,500 per month in college tuition. In requesting periodic alimony, the [wife] included these expenses which were clearly for the benefit of an adult child, and expenses related to the minor child, expenses which are surely covered by child support. Based on the [wife's] own testimony, the amount of alimony should be reduced by, at least, $4,500.00 per month. The award of periodic alimony made represents an attempt to compel the [husband] to contribute to expenses related to the adult child's college expenses in a way that circumvents the Christopher decision. Further, by her own testimony, the [wife] admitted that her expenses are not great, and that the majority of the alimony she was requesting was to pay expenses for her two children. The amount and duration of periodic alimony awarded is excessive, inequitable, and improper.
"8. The award of a judgment against the [husband] in the sum of $250,000.00 is not supported by the evidence, nor the equities of the case. The Judgment of Divorce in subsequent paragraphs effectively divided every individual cash account held by the parties. As a result, the [husband] will not have sufficient funds to satisfy this provision. Any alimony in gross award must be payable out of a party's present estate and may not be based on future earnings."
On December 8, 2016, after a hearing, the trial court entered an order awarding one-half of the funds in the wife's attorney's trust account to the husband and the other half to the wife's attorney. Because the December 8, 2016, order resolved all of the pending issues, the judgment became final on that date.
On January 4, 2017, the wife filed a motion pursuant to Rule 59, Ala. R. Civ. P., seeking to alter, amend, or vacate the December 8, 2016, judgment in which she challenged the division of the funds in the attorney's trust account. On January 25, 2017, after a hearing on the husband's motion to alter, amend, or vacate the October 13, 2016, order, the trial court entered an order modifying the October 13 order to include an exchange location for the minor child's visitation and expressly denied "all other matters."
On March 3, 2017, the husband filed his notice of appeal to this court, which was held in abeyance pursuant to Rule 4(a)(5), Ala. R. App. P., until March 8, 2017, when the trial court entered an order denying the wife's postjudgment motion.
Discussion
I. Child Custody
The husband first challenges the judgment because it does not award the husband joint legal custody of the minor child, which he contends was agreed between the parties. Although the judgment does not use the statutory language set forth in § 30-3-151, Ala. Code 1975,[3] because *63 the judgment specifically grants the wife "primary residential custody," grants the husband specified rights of visitation with the minor child, and orders the husband to pay child support, we construe the judgment as granting the wife sole physical custody. See § 30-3-151(5), Ala. Code 1975. See also Johnson v. Johnson, [Ms. 2160809, Jan. 26, 2018] --- So.3d ----, ---- n. 1 (Ala. Civ. App. 2018) (construing a judgment that awarded "primary physical custody" to the father and visitation rights to the mother as awarding sole physical custody to the father).
The judgment is silent as to the issue of legal custody, and the judgment does not contain any information related to either parent's "rights and responsibilities to make major decisions concerning the child, including, but not limited to, the education of the child, health care, and religious training," § 30-3-151(2) and (4), and this court is unable to make any inferences regarding what type of legal custody the trial court intended to award.
The husband contends that, "[w]here a [divorce judgment] is ambiguous as to whether the trial court intended to award joint legal custody, remand is proper for the court to clarify[ ] its intention," and he cites Chapman v. Chapman, 218 So.3d 339, 346-47 (Ala. Civ. App. 2016), in support of his contention. The wife offers no legal authority in response and asserts only that "an interpretation that [the judgment] awards the Wife sole legal custody is clearly supported by the evidence presented at trial because only the Wife requested custody at trial." In Chapman, the trial court's judgment contained inconsistent and conflicting language related to the child-custody award, and this court was unable to determine whether the trial court had correctly deviated from the child-support guidelines in fashioning its child-support award. Id. at 346-47. This court reversed the judgment as it related to child custody and child support and remanded "the cause for the trial court to clarify its custody determination and to specify[, among other things,] whether it granted the parties joint legal custody of the child or granted the wife sole legal custody of the child ...." Id. at 347. Similarly, we cannot determine whether the trial court intended to award joint legal custody to the parties or sole legal custody to the wife. Therefore, we reverse the judgment as it pertains to the child-custody award and remand the cause with instructions for the trial court to enter a judgment clarifying its legal-custody award. Id.
II. Private-School Tuition
The husband also challenges the trial court's order requiring the husband to continue to pay the minor child's private-school tuition "for the remainder of this school year" and "pending further orders." The trial court noted, "[h]owever, if the visitation continues to be a problem still at the end of the school year, upon proper motions being filed with the Court, the Court will consider whether or not [the husband] shall be responsible for paying for the private school tuition solely."
The husband first asserts that the trial court's award of private-school tuition does not comply with Rule 32(C)(4), *64 Ala. R. Jud. Admin. Rule 32(C)(4) provides:
"(4) Additional Awards for Child Support. In addition to the recommended child-support order, the court may make additional awards for extraordinary medical, dental, and educational expenses if (i) the parties have in writing agreed to these awards or (ii) the court, upon reviewing the evidence, determines that these awards are in the best interest of the children and states its reasons for making these additional awards."
Private-school tuition is considered an "additional award" under the purview of Rule 32(C)(4). Deas v. Deas, 747 So.2d 332, 337 (Ala. Civ. App. 1999) ; see also McGowin v. McGowin, 991 So.2d 735, 742 (Ala. Civ. App. 2008). The requirements of Rule 32(C)(4) are applicable "even in the case of high-income parents whose basic child-support obligation is not determined by reference to the [child-support] guidelines." J.D.A. v. A.B.A., 142 So.3d 603, 618 (Ala. Civ. App. 2013).[4]
It is undisputed from the record before us that the parties did not agree, in writing or otherwise, for the husband to pay the minor child's private-school tuition, which would have supported the award under Rule 32(C)(4)(i). See Etheredge v. Etheredge, 730 So.2d 245, 248 (Ala. Civ. App. 1999) (affirming a trial court's award of private-school tuition when evidence conflicted regarding whether the father in that case had agreed to pay the tuition). Therefore, in order to properly make this additional award, the trial court was required to determine that the award is in the minor child's best interest and to state its reasons for making such an award. Because the judgment does not contain a statement of the reasons for ordering the husband to pay the minor child's private-school tuition, as required by Rule 32(C)(4)(ii), we must reverse the judgment insofar as it orders the husband to pay the minor child's private-school tuition. See J.D.A., 142 So.3d at 618 (reversing an award of automobile-related expenses for a child when the trial court failed to comply with Rule 32(C)(4)(ii) ). As we explained in J.D.A., supra, on remand the trial court, in determining whether the husband should pay the child's private-school tuition, should consider that,
" '[w]hen the combined adjusted gross income exceeds the uppermost limit of the child support schedule, the amount of child support awarded must rationally relate to the reasonable and necessary needs of the child, taking into account the lifestyle to which the child was accustomed and the standard of living the child enjoyed before the divorce, and must reasonably relate to the obligor's ability to pay for those needs.'
" Dyas v. Dyas, 683 So.2d 971, 973-74 (Ala. Civ. App. 1995) (some emphasis added; footnote omitted)."
J.D.A., 142 So.3d at 619.
The husband also argues that "[t]he trial court abused its discretion by ordering the [husband] to pay expensive private school tuition for a child who, at least substantially, if not entirely, as a result of the wife's alienation, refuses to have a relationship with him." However, we need not address the remainder of the *65 husband's arguments related to the award of private-school tuition because we have reversed the award on another ground.[5]
III. Alimony and Property Awards
The husband also challenges the trial court's award of $10,000 per month in periodic alimony to the wife for five years, followed by an award of $7,000 per month.
"The determination of whether the petitioning spouse has a need for periodic alimony, of whether the responding spouse has the ability to pay periodic alimony, and of whether equitable principles require adjustments to periodic alimony are all questions of fact for the trial court, Lawrence v. Lawrence, 455 So.2d 45, 46 (Ala. Civ. App. 1984), with the last issue lying particularly within the discretion of the trial court. See Nolen v. Nolen, 398 So.2d 712, 713-14 (Ala. Civ. App. 1981). On appeal from ore tenus proceedings, this court presumes that the trial court properly found the facts necessary to support its judgment and prudently exercised its discretion. G.G. v. R.S.G., 668 So.2d 828, 830 (Ala. Civ. App. 1995). That presumption may be overcome by a showing from the appellant that substantial evidence does not support those findings of fact, see § 12-21-12(a), Ala. Code 1975, or that the trial court otherwise acted arbitrarily, unjustly, or in contravention of the law. Dees v. Dees, 390 So.2d 1060, 1064 (Ala. Civ. App. 1980)."
Shewbart v. Shewbart, 64 So.3d 1080, 1089 (Ala. Civ. App. 2010).
The husband argues that the alimony award was improper because, he says, it was not supported by the evidence, it included funds for support of the parties' oldest child, it rewards the wife's alleged parental alienation, and it is excessive when considering the other awards the wife received.
"A petitioning spouse proves a need for periodic alimony by showing that without such financial support he or she will be unable to maintain the parties' former marital lifestyle. See Pickett v. Pickett, 723 So.2d 71, 74 (Ala. Civ. App. 1998) (Thompson, J., with one judge concurring and two judges concurring in the result). As a necessary condition to an award of periodic alimony, a petitioning spouse should first establish the standard and mode of living of the parties during the marriage and the nature of the financial costs to the parties of maintaining that station in life. See, e.g., Miller v. Miller, 695 So.2d 1192, 1194 (Ala. Civ. App. 1997) ; and *66 Austin v. Austin, 678 So.2d 1129, 1131 (Ala. Civ. App. 1996)."
Shewbart, 64 So.3d at 1087-88.
When asked about her monthly expenses to support her request for $10,000 per month in periodic alimony, the wife testified:
"A. According to-I'll have the house payment, that runs [$]2,000. The power bill is five to six [hundred], just regular utilities. I help my [oldest child] with her tuition at [a college] which is on a payment plan.
"Q. So a portion of the $10,000 you are requesting is for your oldest [child's] college tuition, correct?
"A. Yes.
"Q. How much a month do you pay for your oldest [child's] college tuition?
"A. My dad has been paying it since the divorce so I will try to take it back over. It's at least [$]1,500 a month.
"Q. So out of the $10,000 you are going to pay $1,500 a month for your [oldest child's] college, correct?
"A. Yes.
"Q. What else are you going to pay out of the $10,000?
"A. Our food.
"Q. How much does your food run you each month?
"A. I'm not sure. I have no idea; clothing, whatever my daughters need.
"Q. So a portion of the money, a portion of the [$]10,000 goes for [the oldest child], your 20-year-old daughter's clothing, correct?
"A. Yes.
"Q. Tell the judge how much you spend on [the oldest child] on a monthly basis.
"A. It varies. She has a job. It varies from month to month; [$]200, [$]300. I mean, [$]2,000. I mean some months it varies because it's one month when she is getting ready for [college] It's anywhere from $2,000 to $3,000 sometimes.
"....
"Q. And you want to pay that out of the $10,000 you're to receive in alimony, correct?
"A. Yes, I believe in taking care of my children.
"....
"Q. So we have $1,500 a month goes towards tuition and some months over $3,000 to [the oldest child]. So that's almost $4,500 a month you spend on [the oldest child], correct?
"A. Yes. I'm also going to take over [the oldest child's] insurance and car insurance.
"....
"Q. What else are you going to spend the $10,000 on each month, please, ma'am?
"A. I am going to set up a college fund for [the minor child].
"Q. So a portion of this money is going to pay [the minor child's] college expenses?
"A. Yes.
"Q. Tell me what of the $10,000 is going to be spent on you.
"A. Just for gas and food to survive. I give everything to my girls.
"Q. And how much does gas and food to survive cost you each month?
"A. I'm not sure."
Later, on redirect examination, the wife testified that, if she was not awarded the marital residence, she would need money in order to make a down payment for a house and for mortgage payments, utilities, food, gas, and clothing, but she did not provide a dollar amount for any of those proposed expenses. The wife testified she pays $1,400 per month in credit-card *67 bills, and she had earlier testified to spending approximately $2,600 for a mortgage payment and utilities, which totals $4,000.
It was undisputed that the husband had earned a substantial income in recent years and had provided financially for the family throughout the marriage while the wife cared for the children and the parties' home. The trial court could have found from the evidence that the wife had a need for periodic alimony and that the husband had the ability to pay periodic alimony.
The wife testified, however, that she intended to spend approximately $4,500 per month from her alimony award on the parties' oldest child and that she intended to set up a college fund for the minor child. "The purposes of alimony are to preserve, to the extent possible, the economic status of the parties that existed during the marriage and to provide support for the dependent former spouse." Carter v. Carter, 934 So.2d 406, 409 (Ala. Civ. App. 2005) (citing Kahn v. Kahn, 682 So.2d 1377, 1380 (Ala. Civ. App. 1996), and O'Neal v. O'Neal, 678 So.2d 161, 165 (Ala. Civ. App. 1996) ). As this court has explained, expenses for an adult child are "gratuitous undertakings" that the payor spouse "may not be held responsible for through the payment of alimony to offset those expenditures." Sosebee v. Sosebee, 896 So.2d 557, 562 (Ala. Civ. App. 2004). We have further explained, "[t]o allow a trial court to consider expenditures of that nature in fashioning its alimony award would permit, in essence, a trial court to require a parent to pay the living expenses of an adult child in contravention of the law." Id. See also Ex parte Christopher, 145 So.3d 60, 72 (Ala. 2013) (holding that "the child-custody statute[, § 30-3-1, Ala. Code 1975,] does not authorize a court in a divorce action to require a noncustodial parent to pay educational support for children over the age of 19"). Because the wife unequivocally testified that she would use approximately $4,500 of an alimony award to pay expenses associated with the oldest child's college tuition and living expenses, the alimony award appears to be inconsistent with the purposes for which it can be awarded. See Sosebee, 896 So.2d at 562 ; and Ex parte Christopher, 145 So.3d at 72.
We also note that the wife testified that she needed alimony "[j]ust for gas and food to survive," and she testified to monthly expenses totaling approximately $4,000. Although "there is no rigid standard or mathematical formula on which a trial court must base its determination of alimony and the division of marital assets," Yohey v. Yohey, 890 So.2d 160, 164 (Ala. Civ. App. 2004), the petitioning spouse must introduce evidence to demonstrate "the nature of the financial costs" associated with maintaining the parties' former marital standard of living. Shewbart, 64 So.3d at 1088. The wife did not present evidence demonstrating a need for alimony that would justify a monthly award of $10,000 or $7,000.
Accordingly, we reverse the periodic-alimony award and remand the cause for the trial court to determine "what, if any, amount of alimony might be warranted based upon the wife's expenses and the husband's income." Sosebee, 896 So.2d at 562.
Because we are reversing the periodic-alimony award, we likewise reverse the trial court's division of marital property and award of alimony in gross so that the trial court may reconsider those awards together. See Underwood v. Underwood, 100 So.3d 1115, 1122 (Ala. Civ. App. 2012) (explaining that, because "the issues concerning property division, alimony in gross, and periodic alimony are all interrelated," they must be considered together after a reversal of a judgment pertaining *68 to one of the issues). Therefore, we pretermit discussion of the remainder of the husband's arguments related to the property division and alimony awards.
Conclusion
We reverse the judgment of the trial court, and we remand the cause for proceedings consistent with this opinion. The wife's request for an award of attorney's fees on appeal is denied.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Pittman and Thomas, JJ., concur.
Thompson, P.J., and Moore, J., concur in part and dissent in part, with writings.

The order became final on December 8, 2016, as explained infra, when the trial court entered an order awarding one-half of the funds in the wife's attorney's trust account to the husband and the other half to the wife's attorney.

Although we refer to the husband's motion as one to alter, amend, or vacate, we note that the motion was not filed pursuant to Rule 59, Ala. R. Civ. P., because Rule 59 is applicable only to final judgments. Ex parte Troutman Sanders, LLP, 866 So.2d 547, 550 (Ala. 2003).

Section 30-3-151, Ala. Code 1975, defines five types of child custody:
"(1) Joint custody. Joint legal custody and joint physical custody.
"(2) Joint legal custody. Both parents have equal rights and responsibilities for major decisions concerning the child, including, but not limited to, the education of the child, health care, and religious training. The court may designate one parent to have sole power to make certain decisions while both parents retain equal rights and responsibilities for other decisions.
"(3) Joint physical custody. Physical custody is shared by the parents in a way that assures the child frequent and substantial contact with each parent. Joint physical custody does not necessarily mean physical custody of equal durations of time.
"(4) Sole legal custody. One parent has sole rights and responsibilities to make major decisions concerning the child, including, but not limited to, the education of the child, health care, and religious training.
"(5) Sole physical custody. One parent has sole physical custody and the other parent has rights of visitation except as otherwise provided by the court."

We asked the parties to submit letter briefs regarding the applicability of Rule 32(C)(4) to parties whose income exceeds the upper income limit in the child-support schedule and to address whether J.D.A., supra, should be overruled. Both parties to this case agreed that Rule 32(C)(4) applies in this case, in which the parties' income exceeds the upper income limit in the child-support schedule and neither party asked us to overrule J.D.A. on this point.

We note, however, that trial court, having heard conflicting evidence and observed the demeanor of both parents as they testified, was not required to find that the evidence conclusively established parental alienation, as the husband suggests. See Dunn v. Dunn, 972 So.2d 810, 815 (Ala. Civ. App. 2007) (explaining that the trial court is in the best position to evaluate a witness's demeanor and credibility in resolving conflicting evidence).
We further note that, to the extent the husband raises a facial constitutional challenge to § 30-3-1, Ala. Code 1975, because he did not first raise that argument and serve the attorney general in the proceedings in the trial court, this court cannot address that argument. See Ex parte Northport Health Serv., Inc., 682 So.2d 52, 55 (Ala. 1996) (quoting Ex parte St. Vincent's Hosp., 652 So.2d 225, 228 (Ala. 1994) ) (" 'A constitutional issue can be reached by [an appellate] Court only when it has been raised by a party at the trial level and the attorney general has been served pursuant to § 6-6-227 and Rule 44, Ala. R. App. P. When a party challenging the constitutionality of a statute fails to serve the attorney general, the trial court has no jurisdiction to decide the constitutional claim, and any judgment regarding that claim is void.' ").